**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**Rocky J. Dewyer,**

**Plaintiff,**

**-vs-**

**Matthew J. Sciotti, M.D.,**

**Defendant.**

**Case No. 1:23cv2442**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

Currently pending is Defendant Matthew J. Sciotti, M.D.'s Motion to Dismiss for Failure to State a Claim and for Lack of Personal Jurisdiction pursuant to Fed. R, Civ. P. 12(b)(2) and (b)(6). (Doc. No. 7.) *Pro se* Plaintiff Rocky J. Dewyer did not file a response to Defendant's Motion. For the following reasons, Defendant's Motion to Dismiss (Doc. No. 7) is GRANTED.

## I. Factual Allegations

The *pro se* Complaint contains the following factual allegations. Plaintiff Rocky J. Dewyer ("Plaintiff" or "Dewyer") presented to Defendant Matthew Sciotti, M.D. ("Defendant" or "Dr. Sciotti") between August and December 2019 for treatment related to his cervical, thoracic, and lumbar spine. (Doc. No. 1 at p. 1.) Dr. Sciotti's medical practice is called Orthopedic Associates of Port Huron, and is located in Port Huron, Michigan. (*Id.*)

Plaintiff alleges that Dr. Sciotti misdiagnosed his medical condition by failing to provide a diagnosis of "Physical Disability," and improperly ordered him to return to work without limitations. (*Id.*) Specifically, Plaintiff alleges the following facts in support of his claim:

> Facts of Complaint. During August – December 2019, I Rocky J. Dewyer Plaintiff, did see Medical Doctor Sciotti Matthew J. at Orthopedic Associates of Port Huron. I sought Dr. Sciotti for duty owed to me as a patient. I was failed in receiving this care;

> Dr. Sciotti at O.A.P.H. did not diagnosis my Cervical, Thoracic, or a complete Lumbar. I did offer my complaint of pain in my upper back region. I presented my trauma to Dr. Sciotti, I personally included my medical file chart, from myself, also PCP: Dr. Colombo—Physician Health Care Network. From August 2nd – 2019 to October 23rd – 2019, Sciotti Matthew M.D. did not provide me diagnosis of Physical Disability. M.D. Sciotti Matthew J. did order I return to work, without limitations, on August 5th – 2019.

(*Id.*) (grammar and punctuation as in original). Plaintiff alleges that, as a result of Dr. Sciotti's misdiagnosis, he lost his home, incurred debt, and endured years of "suffering, of surviving, of coping with Chronic Debilitating Physical Pain, without the service of Certificate of Disability, without assistance in walking and other supportive devices, [and] without treatment to or offering of surgeries." (*Id.*) He alleges that he has "not been treated according to Professional Standards of Medical Care at private sector." (*Id.*)

Plaintiff asserts a medical malpractice claim against Dr. Sciotti under Michigan Comp. Laws Ann. § 600.2912. (*Id.*) Plaintiff alleges that, pursuant to Michigan law, "a notice of 182 days [was] made available to the defendant" and that the instant action was filed "within six months of reasonable discovery." (*Id.* at pp. 2, 4.) Plaintiff then appears to allege various "special circumstances" that he believes shows that he timely filed the instant action under Michigan's two year statute of limitations for medical malpractice actions. (*Id.*) These circumstances include the following:

> A. My actual record is not available to a doctor for surgery; the political notation of my character health is charted and acted upon, with decision. Never has a decision been made for my physical health, wealth or injury; not one surgeon or PCP has responded to me, my complaints, my issues, or my reasons for visiting. I came to Doctors for surgery and for expert witness in diagnosis of my Total Physical Disability.
>
> B. I am not in sound health, recovery, or given proper diagnosis; without assistive support devices recommended, without surgeries made, I cannot value or express the quality of life removed from me. I do state, as individual in physical and neural pain and instable spine; the assistive devices I have purchased, such

as cane and wheelchair, do enable me to leave my home, do offer me a better quality of life.

C. I have not been given MRI image of my Thoracic injury at T5/T6 region to evaluate negligence; at every move of my upper torso is often a click and a hinging move of my Thoracic herniation at vertebra and disc, this move issues a paralyzing signal to my upper body and lungs, I have to silent my mind, so my muscles do not spasm, my body surrendering to paralysis; I have no medical supportive device.

D. I have not been able to retain legal aid to support my research, discovery or trial.

E. I have not found a healthcare practitioner to assist me at a proper physical of my injuries or physical disabilities; I am physically bound with a broken back, am very limited in my physical ability and time duration of physical activities, no Medical Doctor does testify the full truth of this measure at physical scientific value. My measurements at neural canal impingement of C-T-L Spine have never been associated to my disability or needs neural and surgical, pain, or limited abilities to a Professional Medical Standard Of Care; my muscles, blood arteries, and spinal bones as a physical measure or injury are not discussed, nor accepted to me by Medical Practitioner at my record of severe chronic pain.

(*Id*. at p. 2.) (grammar and punctuation as in original). Plaintiff further alleges that he has "had not had the awareness brought to me at expert title" and that he does "not have any attorneys recognition nor ability natural to know these conditions, timelines, or standards." (*Id*. at p. 4.) He claims that he has limited monetary ability and asks "lenience of the Court" to permit him to establish that he filed the instant action within a "reasonable" time frame. (*Id*. at p. 5.)

Lastly, Plaintiff alleges generally that he has been "attacked by the medical establishment" and subjected to defamation and acts "against [his] health and wellbeing." (*Id*. at p. 3.) He asserts that he was denied surgery in an unidentified emergency room and that a primary care physician assistant named Jessica Onufrak "left me to my bed with 4.5mm of spinal canal/chord attached at my L5/S1 severe herniation, for a week, to return to a follow up, without an MRI Appointment, or

Certificate of Disability, while in severe pain, severe instability of the spine, difficulty making gated steps, left to walk home, with a blood pressure of 200+/100+." (*Id.*) Plaintiff also claims that Dr. Yehia Elsafy "refuse[s] me as patient, for having left voicemail recordings begging for assistance to surgery, my patient doctor rights violated; Dr. Yehia Elsafy reached out to the local Port Huron Police Dept. notifying them of my bad behavior, requesting I be called by Police Agents and told to not ever again contact my healthcare practitioner."[1] (*Id.*) Plaintiff claims that he needs "emergency surgery at my Thoracic and Lumbar." (*Id*. at p. 4.)

Plaintiff attaches several Exhibits to his Complaint. First, Plaintiff attaches a copy of a Social Security Decision dated June 26, 2023 by Administrative Law Judge ("ALJ") Crystal L. White-Simmons. granting Plaintiff's application for disability benefits. (Doc. No. 1-1.) Therein, ALJ White-Simmons finds that Plaintiff has the following severe impairments: (1) schizophrenia; (2) lumbar spine degenerative disc disease with nerve root distortion, spondylosis without myelopathy, and radiculopathy; (3) cervical degenerative disc disease; and (4) chronic pain syndrome. (*Id*. at PageID# 10.) The ALJ then finds that the severity of Plaintiff's impairments meets the criteria of section 12.03 of 20 CFR Part 404, Subpart P, Appendix 1 because Plaintiff has (1) schizophrenia with medical documentation of delusions or hallucinations, disorganized thinking, and/or grossly disorganized behavior or catatonia; (2) marked limitations in interacting with others, and in concentrating, persisting, or maintaining pace; and (3) moderate limitations in understanding, remembering, or applying information, and in adapting or managing himself. (*Id*. at PageID# 11- 13.) Among other things, the ALJ finds the opinions of two state agency medical consultants to be persuasive because

[1] The Court notes that neither Ms. Onufrak nor Dr. Elsafy have been named as Defendants in the instant action.

they are "consistent with laboratory evidence of lumbar and cervical impairment throughout the period of alleged disability." (*Id*. at PageID# 13.) The ALJ concludes that Plaintiff has been disabled for purposes of the Social Security Act since July 13, 2019. (*Id*. at PageID# 14.)

The second Exhibit attached to the Complaint appears to be a report of an MRI taken of Plaintiff's cervical and thoracic spines on April 20, 2022. (Doc. No. 1-2.) This Report finds (1) mild degenerative disc space narrowing at T5-T6; and (2) a small left paracentral disc bulge or protrusion that mildly effaces the ventral thecal sac with borderline cord contact. (*Id*.)

The third Exhibit is a "Disability Certificate" for Plaintiff dated August 5, 2019. (Doc. No. 1-3.) It is on "Orthopedic Associates" letterhead and signed by Dr. Sciotti. (*Id*.) The Certificate states as follows: "This is to certify that the above patient [i.e., Plaintiff] has been under my professional care and will be able to return to work on 8/5/2019 with no restrictions." (*Id*.)

The fourth Exhibit is labeled "Pain Points shown Doctors" and consists of largely illegible, handwritten notes that appear to relate in some fashion to Plaintiff's physical impairments. (Doc. No. 1-4.) The fifth Exhibit is labeled "Damages-Losses" and includes various invoices and credit reports. (Doc. No. 1-5.)

The sixth, and final, Exhibit is labeled "Expert Witness (Recommendation)." (Doc. No. 1-6.) This Exhibit consists of a letter dated June 4, 2021 from Murali Guthikonda, M.D., of the DMC Medical Group, which reads as follows:

> To whom it may concern,
>
> I saw Rocky Dewyer in the office on 5/24/2021. He suffers from constant pain all over the body, particularly in his lower back and legs. He reports a constant dull pain [that] begins at base of [his] spine for the past 3 years, shooting pain to the posterior and anterior [right lower extremity], right foot numbness, numbness and paresthesias of the [bilateral upper extremities] and hands. He is in too much pain to work currently and has severe difficulty walking. I reviewed his cervical and lumbar spine MRIs

> completed at Mclaren on 5/21/2021. He has an L5-S1 central disk with desiccation and a small C5-6 disk bulging without cord compression. The degree of prolapse is too minor to account for his significant symptoms, so I do not recommend surgical intervention for his spine. He has exhausted conservative treatment measures without any relief. Due to that fact and his enduring symptoms that prevent him from working, I believe he will need assistance via disability pay.

(*Id.* at PageID# 23.)

Plaintiff asserts a claim for medical malpractice against Dr. Sciotti under Michigan law, and seeks damages in the amount of $450,000. (Doc. No. 1-8 at PageID 26.)

## II. Procedural History

Plaintiff filed his Complaint in this Court on December 26, 2023, along with a Motion to Proceed *In Forma Pauperis* ("IFP"). (Doc. Nos. 1, 2.) Plaintiff's Motion to Proceed IFP was granted on March 7, 2024, and service was returned executed upon Dr. Sciotti via FedEx on April 17, 2024. (Doc. Nos. 3, 5.)

On May 6, 2024, Dr. Sciotti filed the instant Motion to Dismiss for Failure to State a Claim and for Lack of Personal Jurisdiction, which is supported by an Affidavit from Dr. Sciotti. (Doc. No. 7.) The Certificate of Service states that a copy of the Motion was served on Plaintiff via regular mail at the address listed on the Complaint. (Doc. No. 7 at p. 16.) The record reflects that Plaintiff did not respond to Dr. Sciotti's Motion.

## III. Standard of Review

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[t]he party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction.'" *Beydoun v. Wayaniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quoting *Days Inns Worldwide, Inc. v. Patel,* 445 F.3d 899, 904 (6th Cir. 2006)). If a court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction prior to trial, "it has the discretion to adopt any of the following

courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. Appx 425, 434 (6th Cir. 2006).

In the instant case, neither party indicates a hearing is necessary. Upon review, the Court concludes that a hearing will not assist the Court and that Dr. Sciotti's Motion to Dismiss may be resolved based on the Complaint and its attachments, and Dr. Sciotti's Motion to Dismiss and Affidavit.

Where, as here, the district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). To defeat such a motion, a plaintiff need only make a *prima facie* showing of jurisdiction, which can be done merely through the complaint. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. *Id*. Once the defendant has met the burden, it returns to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id*. (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

A court disposing of a Rule 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal but may consider a defendant's undisputed factual assertions. *See CompuServe*, 89 F.3d at 1262; *Theunissen*, 935 F.2d at 1459; *NTCH-West Tenn, Inc. v. ZTE Corp.*,

761 Fed. Appx 485, 488 (6th Cir. 2019). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff [ ] alleges collectively fail to state a *prima facie* case for jurisdiction." *CompuServe*, 89 F.3d at 1262; *see also Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).

"In a diversity case, a federal court can exercise personal jurisdiction over a defendant if jurisdiction is (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Tharo Systems, Inc. v. Cab Producktechnik GMBH & Co., KG,* 196 Fed. Appx 366 (6th Cir. 2006). Jurisdiction under Ohio's Long Arm Statute is governed by Ohio Rev. Code § 2307.382, and the due process inquiry requires determining "whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. State of Wash.,* 326 U.S. 310, 316 (1945)).

**IV. Analysis**

Dr. Sciotti argues that Plainitiff's Complaint should be dismissed for several reasons. (Doc. No. 7.) Dr. Sciotti first maintains Plaintiff's sole claim for medical malpractice should be dismissed under Rule 12(b)(6) because it is time-barred under Michigan's two year statute of limitations. (*Id.* at pp. 4-5.) Dr. Sciotti next asserts that Plaintiff's malpractice claim should be dismissed because Plaintiff failed to attach an appropriate affidavit of merit signed by a health care professional, as required by Mich. Comp. Laws Ann. § 600.2912d. (*Id.* at pp. 6-7.) Lastly, Dr. Sciotti argues that this Court lacks personal jurisdiction over him under either Ohio's Long Arm Statute, Ohio Rev. Code § 2307.382, or the Due Process Clause because Dr. Sciotti is a Michigan resident, his medical

practice is incorporated in Michigan, he treated Plaintiff in Michigan when Plaintiff was himself a Michigan resident, and he does not practice medicine in any capacity within the State of Ohio. (*Id.* at pp. 7-14.) As noted above, Plaintiff failed to oppose or otherwise respond in any fashion to Dr. Sciotti's Motion.

Because it is dispositive, the Court begins (and ends) by addressing Dr. Sciotti's arguments regarding personal jurisdiction.

**A. Personal Jurisdiction**

In support of his argument that this Court lacks personal jurisdiction, Dr. Sciotti relies heavily on his Affidavit, which is attached as an Exhibit to his Motion. (Doc. No. 7 at PageID#s 57-59.) Therein, Dr. Sciotti avers as follows:

> (1) he is licensed to practice medicine in the State of Michigan;
>
> (2) his medical practice is currently located in Port Huron, Michigan and was located in Port Huron, Michigan during the events described by Plaintiff from August 2019 through December 2019;
>
> (3) he is shareholder of Orthopedic Associates of Port Huron, P.C. ("OAPH"), which is registered as a domestic corporation with the Michigan Secretary of State and is not registered as a foreign business entity eligible to transact business in Ohio;
>
> (4) OAPH does not maintain offices in Ohio or have any employees who practice medicine in Ohio;
>
> (5) OAPH does not have a corporate parent, subsidiary, or related corporate entity located in Ohio;
>
> (6) neither he nor OAPH regularly sell anything or conduct business in Ohio;
>
> (7) he resides in Michigan;
>
> (8) he does not maintain a medical practice in Ohio, nor has he ever held a license to practice medicine in Ohio;

> (9) the medical treatment he provided to Plaintiff in 2019 exclusively took place at his medical practice in Port Huron, Michigan and was not related to any Ohio governmental function or determination;
>
> (10) he did not provide any medical treatment to Plaintiff within the State of Ohio; and
>
> (11) based upon his personal knowledge and belief, Plaintiff was a resident of Michigan throughout the events alleged in the Complaint.

(*Id.*)

Based on the above, Dr. Sciotti argues that the Complaint must be dismissed because the exercise of personal jurisdiction over him would not comport with his constitutional right to due process. (Doc. No. 7 at pp. 11- 15.) Dr. Sciotti asserts that there is no general personal jurisdiction in the instant case because he is a Michigan physician and resident, and does not practice medicine in any capacity in the State of Ohio or otherwise transact any business in Ohio. (*Id*. at p. 12.) Dr. Sciotti further argues that there is no specific jurisdiction because he did not purposefully avail himself of the privilege of acting in Ohio, and Plaintiff's claims do not arise from Dr. Sciotti's activities in Ohio. (*Id*. at pp. 12-15.)

For the following reasons, and in the absence of any opposition from Plaintiff, the Court concludes that personal jurisdiction over Dr. Sciotti would not be consistent with due process.[2]

[2] As noted above, Dr. Sciotti also argues personal jurisdiction does not exist under Ohio's Long Arm Statute, Ohio Rev. Code § 2307.382, because "the dispute here does not arise out of business Dr. Sciotti conducted in Ohio, tortious conduct that occurred within Ohio, nor any substantial activity Dr. Sciotti allegedly conducted within the State." (Doc. No. 7 at p. 9.) The Ohio General Assembly amended Ohio's Long Arm Statute in April 2021 to extend its reach to the limits of the U.S. Constitution. Before the amendment, "Ohio's long-arm statute consisted of a list of enumerated acts set forth in § 2307.382(A), followed by an admonition in § 2307.382(C) that '[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.' " *AmaTech Grp. Ltd. v. Fed. Card Servs., LLC,* 2022 WL 44674 at *4 (S.D. Ohio Jan. 5, 2022) (quoting O.R.C. § 2307.382). Based on that language, "courts routinely noted that Ohio's long-arm statute did not extend jurisdiction to the fullest extent that the Due Process Clause allows." *Id*. The amendment, however, revised subsection (C) to read: "In addition to a court's exercise of personal jurisdiction under subsection (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code §

The federal Due Process Clause requires that the defendant have sufficient "minimum contact[s]" with the forum state such that a finding of personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (citing *Third Nat'l Bank v. WEDGE Group, Inc*., 882 F.2d 1087, 1089 (6th Cir.1989) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Two types of personal jurisdiction exist under the Due Process Clause: (1) general jurisdiction, when the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state. *Id*. at 712–13 (citing *Third Nat'l Bank*, 882 F.2d at 1089) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 & n. 15 (1985))). A non-resident defendant may be subject to the general jurisdiction of the forum state only where his contacts with that state are "so continuous and systematic as to render [him] essentially at home in the forum State." *Id*. at 713 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16 & n. 9 (1984)). A finding of specific jurisdiction requires that three elements be satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id*. (citing *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)) (quoting *S. Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).

---

2307.382(C). Ohio courts have yet to rule on the effect of this new language, and federal courts have disagreed over its interpretation. *See A.B. Pratt & Co. v. Bridgeport Grp., LLC,* 2023 WL 2865640 at *8 (N.D. Ohio Apr. 10, 2023) (collecting cases). As the Court concludes that personal jurisdiction over Dr. Sciotti would not be consistent with the Due Process Clause, it need not reach this issue or otherwise address Dr. Sciotti's arguments that this Court does not have personal jurisdiction over him under Ohio Rev. Code § 2307.382.

The Court first finds that Plaintiff has not demonstrated the existence of general jurisdiction. As an initial matter, the Court finds that Plaintiff has failed to make a *prima facie* showing of general jurisdiction because he failed to allege any facts suggesting that Dr. Sciotti has continuous and systematic contacts with the State of Ohio so as to render him "essentially at home" in this State. Plaintiff has not alleged that Dr. Sciotti resides in Ohio, has an office in Ohio, practices medicine in Ohio, regularly visits and/or conducts business in Ohio, or has any other continuous and systematic contacts with the State of Ohio. (Doc. No. 1.) By contrast, Dr. Sciotti has expressly averred that he is not a resident of Ohio, does not maintain a medical practice in Ohio, does not hold a license to practice medicine in Ohio, and that he does not regularly sell anything or conduct business with any business, individual or other entity in the State of Ohio. (Sciotti Aff. (Doc. No. 7) at ¶¶ 12, 14, 15.) Plaintiff has not filed an opposition to Dr. Sciotti's Motion and, thus, does not dispute any of Dr. Sciotti's factual assertions. *See CompuServe*, 89 F.3d at 1262 (noting that a court may consider a defendant's undisputed factual assertions when considering a Rule 12(b)(2) motion). Based on the above, and in light of the lack of opposition, the Court finds that Dr. Sciotti is not subject to general jurisdiction in Ohio.

The Court further finds that Plaintiff has not demonstrated that Dr. Sciotti is subject to specific jurisdiction in Ohio. First, the Court finds that Plaintiff has failed to allege any facts showing that Dr. Sciotti purposefully availed himself of the privilege of conducting activities in the State of Ohio. Purposeful availment—the first factor—is "the *sine qua non* for *in personam* jurisdiction." *Mohasco.*, 401 F.2d at 381-82. It is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should

reasonably anticipate being haled into court there." *Burger King Corp*, 471 U.S. at 474–75 (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). Here, Plaintiff does not allege any facts suggesting that Dr. Sciotti's treatment of Plaintiff in Michigan in 2019 created a "substantial connection" with Ohio such that Dr. Sciotti should reasonably have anticipated being haled into Court here. Notably, Plaintiff does not allege that he received any medical treatment from Dr. Sciotti in Ohio between August and December 2019 (or, for that matter, at any time whatsoever), or that either he or Dr. Sciotti were residents of Ohio during that time period. Nor does Plaintiff allege that he received medical treatment from Dr. Sciotti for some purpose relevant to the State of Ohio or an Ohio governmental function or determination.

Thus, the Court finds that Plaintiff has not made a *prima facie* showing of purposeful availment. The fact that Plaintiff apparently moved, at some point in time, to Ohio and currently resides in this State is not sufficient, standing alone, to demonstrate purposeful availment. As this Court recently explained:

> Courts require purposeful availment to ensure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *Burger King*, 471 U.S. at 475 (citing *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774 (1984)). In this regard, the Supreme Court has explained that, in examining a defendant's contacts, courts "look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with persons affiliated with the State." *Id.* at 286.

*A.B. Pratt & Co. v. Bridgeport Group, LLC*, 2023 WL 2865640 at * 11 (N.D. Ohio April 10, 2023). Here, although Plaintiff appears to have moved to Ohio at some point after his treatment with Dr.

Sciotti,[3] he has not alleged any facts that Dr. Sciotti himself has or had any affiliation, whatsoever, with the State of Ohio. Accordingly, the Court finds that Plaintiff has failed to make a *prima facie* showing of purposeful availment so as to establish the first element of specific jurisdiction. [4]

The Court further finds that Plaintiff has failed to allege any facts showing that his medical malpractice claim "arose from" Dr. Sciotti's activities in Ohio. As noted above, for specific jurisdiction to attach under the second element, "the cause of action must arise from the defendant's activities" in the forum state. *Mohasco*, 401 F.2d at 381. To meet this requirement, a plaintiff must establish that his claims "arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U. S. 255, 262-263 (2017)). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267.

Here, Plaintiff alleges no facts suggesting that his claim arises out of or relates to any activities by Dr. Sciotti in the State of Ohio. As has been discussed above, Plaintiff does not allege any facts

---

[3] The Exhibits attached to Plaintiff's Complaint show that he was residing in Michigan (or, at the very least, receiving mail at a Michigan residential address) in October 2019 (Doc. No. 1-1 at PageID# 6), June 2023 (*Id*. at PageID# 7), and October 2023 (*Id*. at PageID# 18.)

[4] Moreover, even if Plaintiff had made such a *prima facie* showing, Dr. Sciotti has met his burden of coming forward with evidence that he did not purposefully avail himself of the privilege of conducting activities in Ohio. Specifically, and as discussed *supra*, Dr. Sciotti submitted an Affidavit in which he avers that (1) the medical treatment he provided to Plaintiff in 2019 "exclusively took place at my medical practice located in Port Huron, Michigan;" (2) such treatment "was not related to any Ohio governmental function or determination;" and (3) he did not provide any medical treatment to Plaintiff within the State of Ohio. (Sciotti Aff. at ¶¶ 16, 17, 18.) Dr. Sciotti also avers that, based upon his personal knowledge and belief, Plaintiff was a resident of Michigan "throughout the events alleged in the Complaint" and that he (Dr. Sciotti) "had no knowledge or expectation that the Plaintiff would leave Michigan and relocate to Ohio." (*Id*. at ¶ 19, 20.) Plaintiff has not filed an opposition to Dr. Sciotti's Motion and, thus, does not dispute any of Dr. Sciotti's factual assertions.

that Dr. Sciotti conducted any activities, of any kind, within the State of Ohio. Nor does Plaintiff allege that Dr. Sciotti had any knowledge or awareness that Plaintiff had any connection to Ohio, intended to move to Ohio, or that Plaintiff's record of treatment with Dr. Sciotti had any connection or relevance to any activity or governmental function within the State of Ohio. Moreover, as discussed above, Dr. Sciotti has expressly averred that neither he nor his medical practice conducted any activities in, or had any connection to, the State of Ohio. Plaintiff has not disputed Dr. Sciotti's factual assertions. Accordingly, the Court finds that Plaintiff has failed to make a *prima facie* showing that his cause of action arose from Dr. Sciotti's activities in Ohio, so as to establish the second element of specific jurisdiction.

In light of the above, and in the absence of any opposition from Plaintiff, the Court finds that Plaintiff has failed to make a *prima facie* showing of either the first or second elements of specific jurisdiction. Because each element of the Sixth Circuit's specific jurisdiction test "represents an independent requirement, [the] failure to meet any one of the three means that personal jurisdiction may not be invoked." *Lak, Inc. v. Deer Creek Enters*., 885 F.2d 1293, 1303 (6th Cir. 1989). *See also Showman v. Q Corporate Holdings, LLC, et al.,* 2024 WL 149754 at * 14 (N.D. Ohio Jan. 12, 2024). Thus, the Court grants Dr. Sciotti's Motion to Dismiss for lack of personal jurisdiction.[5]

[5] Because the Court finds that dismissal is warranted on the basis of lack of personal jurisdiction, it need not (and will not) address Dr. Sciotti's arguments that Plaintiff's Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

## V. Conclusion

For all the foregoing reasons, Defendant Matthew J. Sciotti, M.D.'s Motion to Dismiss (Doc. No. 7) is GRANTED.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: August 21, 2024